**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CRISTIAN RAMOS, M52272,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 19-cv-0153-SMY** |
| | ) | |
| **C/O FERNANDEZ,** | ) | |
| **C/O HAMBURGER,** | ) | |
| **JOHN DOE 1 (sergeant 3d shift),** | ) | |
| **JOHN DOE 2 (C/O 3d shift),** | ) | |
| **C/O DAMRON,** | ) | |
| **C/O TATE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court for preliminary review of the Complaint filed by Plaintiff Cristian Ramos, an inmate in the Illinois Department of Corrections who currently resides at Hill Correctional Center (Doc. 1). Plaintiff brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations occurring while he was in custody at Pinckneyville Correctional Center ("Pinckneyville"), including excessive force and failure to protect . He seeks monetary damages and injunctive relief. (Doc. 1, p. 17).

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner Complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations are to be liberally construed.

*Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## Complaint

Plaintiff makes the following allegations in the Complaint: on the evening of October 28, 2018, Plaintiff was in his cell with cellmate Jermaine Perkins (Doc. 1 at 12). As correctional officers began to make rounds to distribute medications with a prison nurse, Perkins told Plaintiff that one of the correctional officers on duty, C/O Damron, attended grade school with him. Plaintiff engaged in verbal banter with or towards C/O Damron about Damron's reputation in grade school, which apparently angered Damron.[1] C/O Damron asked Plaintiff if he would like his medication, to which Plaintiff replied yes. C/O Damron and C/O Tate cuffed one arm tightly through the chuck hole so that Plaintiff could take his medication and then C/O Damron aggressively placed the second cuff. Plaintiff said nothing about the first cuff. After the second cuff Plaintiff yelled in pain, but Damron just giggled and Tate refused assistance.

Sergeant Dudat and Lieutenant Marade stopped by the cell shortly thereafter and threatened Plaintiff with physical retribution if he poked fun at any more officers. Plaintiff told them that Damron had cut him with the cuffs, but they refused assistance.

Around 11:15pm on October 28, 2018, Plaintiff informed Correctional Officer Fernandez that he had two cuts that required medical attention. Fernandez saw the cuts and refused to render medical assistance. He stated that the sergeant on duty would not authorize Plaintiff to be taken to the medical unit for the cuts because they were not bleeding profusely. Plaintiff engaged in a verbal conflict with Fernandez during which they exchanged insults and racial slurs. When Plaintiff stopped engaging, Fernandez walked away. He returned with Correctional Officer Hamburger and an unknown correctional officer (John Doe 2). The officers directed Plaintiff to

---

[1] Plaintiff alleges "My celly and I were laughing at him making fun of him. We were saying jokes about him and telling him there's nothing wrong with it cause you went to the same school" (*Id.*).

quickly suit-up, so he could be escorted to the medical unit. They aggressively cuffed Plaintiff through the chuck hole and Fernandez grabbed him aggressively by the cuffs and hair to march him down the hall. Fernandez forced Plaintiff's head into a door to open it. Plaintiff yelled to protect himself, but Fernandez pulled his hair and tossed him to the ground.

While Plaintiff lay on the ground on his side with hands cuffed behind his back, Fernandez punched him in the nose which caused him to be dazed and tear up. Fernandez then yanked him upwards and proceeded about 10 feet into a sergeant's office (John Doe 1). In the office, Plaintiff showed the sergeant his cuts and informed him that the previous shift of officers provided no assistance. The sergeant told Plaintiff that he would not get medical care until the 4:30am medical rounds and refused to get Plaintiff alcohol pads or other medical supplies in the interim. Plaintiff kicked a desk out of frustration. The sergeant grabbed Plaintiff by the hair, pulled him to a chair, yelled, spit in his face, and threatened further violence. Plaintiff was directed to return to his cell to await the nurse and Correctional officers Fernandez and Hamburger escorted him back to his cell.

Plaintiff alleges that his Fourth, Ninth, and Fourteenth Amendment rights were violated because officers "had a realistic opportunity to step forward and prevent another officer from violating [his] constitutional rights cruel and unusual punishment through the use of excessive force but failed to do so" (*Id.* at 16). In support of his Complaint, Plaintiff submitted a sworn affidavit wherein he alleges that he timely exhausted the grievance procedure (*Id* at 20). Plaintiff seeks $95,000 in compensation and transfer from Pinckneyville to another facility.

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following Counts:

> Count 1: Eighth Amendment excessive force claim against Officers Tate and Damron for aggressively handcuffing Plaintiff causing physical injury

Count 2: Eighth Amendment failure to intervene claim against Officer Tate for failing to stop Damron's behavior

Count 3: Eighth Amendment excessive force claim against Officer Fernandez for his physically aggressive behavior while escorting Plaintiff about the prison

Count 4: Eighth Amendment excessive force claim against John Doe Sergeant No. 1 for his physically aggressive behavior towards Plaintiff in the office

Count 5: Eighth Amendment failure to intervene by John Doe No. 1 for failing to stop Fernandez's aggressive conduct

Count 6: Eighth Amendment failure to intervene claim against Officer Hamburger and John Doe 2 (unknown correctional officer) for failing to intervene in the conduct towards Plaintiff by Fernandez or John Doe 1.

The parties and the Court will use these designation in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.[2]

## Applicable Law

The intentional use of excessive force by prison guards against an inmate without penological justification constitutes cruel and unusual punishment in violation of the Eighth Amendment and is actionable under § 1983. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). An inmate must show that an assault occurred, and that "it was carried out 'maliciously and sadistically' rather than as part of 'a good-faith effort to maintain or restore discipline.'" *Wilkins*, 559 U.S. at 40 (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). An inmate seeking damages for the use of excessive force need not establish serious bodily injury to make a claim, but not "every malevolent touch by a prison guard gives rise to a

---

[2] *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (an action fails to state acclaim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

federal cause of action." *Wilkins*, 559 U.S. at 37-38 (the question is whether force was de minimis, not whether the injury suffered was de minimis); *see also Outlaw v. Newkirk*, 259 F.3d 833, 837-38 (7th Cir. 2001).

Under certain circumstances, "a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). An inmate asserting a failure to intervene claim under § 1983 against officers who were present when the inmate's constitutional rights were violated by a different officer must show that the officers had reason to know that excessive force was being used, and the officers had a "realistic opportunity to intervene to prevent the harm from occurring." *Abdullahi v. City of Madison*, 324 F.3d 763, 774 (7th Cir. 2005) (*quoting Yang*, 37 F.3d at 284 (7th Cir. 1994)).

## Discussion

### Count 1 – Excessive Force By Damron and Tate

Plaintiff alleges that Defendants Tate and Damron subjected him to excessive force by handcuffing him aggressively during evening rounds to distribute medications. According to the Complaint, Tate only participated in placing the first handcuff on Plaintiff's and Plaintiff did not verbalize discomfort during the first cuffing. By contrast, Plaintiff alleges that Damron placed the second cuff tighter, which caused him to shriek in pain. Plaintiff has also presented a plausible reason why Damron might maliciously cuff him because Plaintiff had just been verbally taunting and teasing Damron. Plaintiff has sufficiently stated a claim for excessive force against Damron but not against Tate. Therefore, Count 1 will be dismissed as to Tate, but will proceed as to Damron.

### Count 2 – Failure to Intervene By Tate

Plaintiff alleges that he yelled in pain once the second cuff was applied, but Tate refused

to assist him.  This is sufficient to state a failure to intervene claim against Tate under the circumstances.  Accordingly, Count 2 will proceed against Tate.

## Count 3 – Excessive Force Against Fernandez

Plaintiff alleges that Correctional Officer Fernandez used excessive force against him by cuffing him aggressively, dragging him down a hall by his hair, pushing him to the floor, punching him in the face, and handling him roughly on the walk back to the cell.  The physical conduct alleged against Fernandez, including a punch to the face, presents a viable excessive force claim. Accordingly, Count 3 will proceed.

## Count 4 – Excessive Force Against John Doe 1

Plaintiff alleges that while in John Doe 1's office, he was grabbed by his hair, pushed into a chair, spit upon, and verbally threatened.  Although Plaintiff indicates that the actions came in response to him kicking a desk, it is not clear from the facts available that John Doe 1's alleged actions were necessary to restore order.  Therefore, Count 4 will be allowed to proceed.

## Count 5 – Failure to Intervene By John Doe 1

Plaintiff alleges that Fernandez punched him in the face once ten feet from John Doe 1's office such that John Doe 1 had a view of the events.  Plaintiff has presented no facts suggesting that John Doe 1 should have known a punch was about to occur, or that he could have risen in time to intervene.  Accordingly, Count 5 against John Doe 1 will be dismissed.

## Count 6 – Failure to Intervene Against Defendants Hamburger and John Doe 2

Plaintiff alleges that Correction Officers Hamburger and John Doe 2 could have intervened in the abusive conduct by Fernandez.  Specifically, he alleges that the two officers arrived at Plaintiff's cell and followed Fernandez to the sergeant's (John Doe 1's) office during which time Fernandez grabbed him by the cuffs and hair, forced his head into a door to open it, pulled his hair

and tossed him to the ground, and punched him in the nose, but they did nothing to intervene. These allegations are sufficient to allow Count 6 for failure to protect to procced against Defendants Hamburger and John Doe 2.

## Request for Injunctive Relief

In the Complaint, Plaintiff seeks an order that he be transferred to a prison other than Pinckneyville for his personal safety. Since the date of filing, he has been moved to Hill Correctional Center. When an inmate is transferred to another prison, his request for injunctive relief against officials at the first prison is generally moot, unless "he can demonstrate that he is likely to be retransferred" back to the prison. *See Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) (citation omitted); *Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011). Plaintiff has made no such showing. Accordingly, Plaintiff's request for injunctive relief is **DENIED**.

## Disposition

**IT IS ORDERED** that **Count 1** will proceed against **C/O Damron,** but it is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted against **C/O Tate**.

**IT IS FURTHER ORDERED** that **Count 2** will proceed against **C/O Tate**.

**IT IS FURTHER ORDERED** that **Count 3** will proceed against **C/O Fernandez.**

**IT IS FURTHER ORDERED** that **Count 4** will proceed against **C/O John Doe 1.**

**IT IS FURTHER ORDERED** that **Count 5** is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted against **C/O John Doe 1.**

**IT IS FURTHER ORDERED** that **Count 6** will proceed against **C/O Hamburger** and **John Doe 2.**

The Clerk of the Court is **DIRECTED** to **ADD** the Warden of Pinckneyville Correctional Center, **SCOTT THOMPSON**, in his official capacity only, for the purpose of responding to

discovery aimed at identifying the unknown correctional officers. Guidelines for discovery will be set by the undersigned judge. Once the name of the unknown defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

Service shall not be made on the unknown defendants, **JOHN DOE 1** *Sergeant* and **JOHN DOE 2** *Correctional Officer*, until such time as Plaintiff has identified each by name in a properly filed motion for substitution. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants C/O Damron, C/O Fernandez, and C/O Hamburger: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Plaintiff. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that, if a defendant can no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

With the exception of Defendant Thompson, Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g).

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that this entire matter shall be **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(3) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Plaintiff's obligation to pay the filing fee for this action was incurred at the time the action was filed, thus the filing fee of $350.00 remains due and payable. *See* 28 U.S.C. § 1915(b)(1); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998).

**IT IS SO ORDERED.**

**DATED: 5/30/2019**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**United States District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**